## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 25-MJ-19 (MJS)** |
| | ) | |
| **RILEY JANE ENGLISH** | ) | |
| | ) | |

### DEFENDANT'S
### MOTION FOR RELEASE

Defendant Riley English respectfully opposes the government's Motion for Detention and requests release. First, Ms. English did not receive, possess, or transfer a firearm, under 26 U.S.C. § 5861 or, carry or discharge a firearm, dangerous weapon, explosive or incendiary device, under 40 U.S.C. § 5104(e)(1)(A). Second, the offense for which Ms. English is charged is not detention eligible under 18 U.S.C. § 3142(f)(1)(E) because the crime charged is not a crime of violence and does not involve the possession or use of a firearm or destructive device. Third, the government cannot overcome the presumption of release where there is not clear and convincing evidence that there are no conditions or combination of conditions that can reasonably assure the safety of the community. For those reasons, Ms. English should be released.

### Argument

#### I. The charges brought forth by the government are not eligible for detention because it cannot prove that Ms. English used a "destructive device."

The government's detention request is premised upon the unfounded conclusion that a "50 millimeter bottle of Absolut brand vodka with a grey cloth

affixed to its top," where the "grey cloth was soaked in hand sanitizer" constituted a destructive device.  ECF No. 1-1 at 3.

In another recent case with similar charges, the Court asked the parties to brief whether a car containing gasoline in it was a destructive device. *United States v. Hinton*, 25-MJ-03 (MAU). Counsel for Mr. Hinton was not able to find any cases where a car is considered destructive by virtue of the likelihood that it contains gasoline and advised the Court that the car in that case was not a destructive device because it was "neither designed nor redesigned for use as a weapon." 18 U.S.C. § 921 (a)(4)(C).  Moreover, the components necessary to cause an explosion did not exist.  In fact, the gasoline did what it was intended to do – burn but not explode.  Without the materials and components that are designed to cause an explosion, the car could not be a "destructive device" as statutorily defined.

In another case, *United States v. Podolsky*, 625 F. Supp. 188 (N.D. Ill. 1985), the Court found that a combination of gasoline, brake fluid and chlorine was not a destructive device.[1]  The court acknowledged that the mixture was flammable, but distinguished the mixture from a destructive device even though "the device here would ignite and cause a fire but not explode" and so could not be thought of as an "incendiary bomb" or "similar device" under any "traditional definition of the words" *Id.* at 198.  *Podolsky* thus concluded "[t]he question here, then, is not whether the device would have been 'destructive' if readily assemble.  Surely it would have

---

[1] Although *Podolosky* and many of the cited cases involve a possession of firearm charge, 26 U.S.C. § 5845(a) contains the same definition for a destructive device as 18 U.S.C. § 921.

caused destruction.  Rather, we must decide whether 'destructive' *as defined by the Act*, includes non-explosive devices of the type in this case."  *Id.* at 197-98 (emphasis in original).

More recently, a District Court found *Podolsky*'s interpretation to be overly narrow but reemphasized that "something more is required" than plain fire.  *United States v. Graziano*, 616 F. Supp. 2d 350, 359 (E.D.N.Y. 2008) (finding that a plastic can containing gasoline with a cloth rag protruding as a fuse was a destructive device.").  The court "recognize[d] that the simple use of incendiary materials (such as gasoline) by an individual does not automatically transform such materials into an 'incendiary bomb.'"  *Id.*  Citing the dictionary definition of "bomb" as a "Container of explosive or incendiary material, designed to explode on impact or wen detonated by a timer or remote-control," *Graziano* concluded that "an incendiary bomb is simply any container or device that contains an incendiary material that is designed to be dispersed in a violent or rapid manner upon ignition, impact, and/or detonation, including in the form of heat or fire."  *Id.*

Other courts have relied upon the "designed [or] redesigned for use as a weapon" clause from the statute to check prosecutorial overreach in defining a destructive device.  In *United States v. Reed*¸ the Ninth Circuit reversed a conviction where a defendant had "burned a building by igniting several paper-wrapped beverage cans filled with gasoline."  The court found that the cans were not and could not be used as a weapon, even though it was "capable of causing great

incendiary damage" and was likely to cause "serious harm."  726 F.2d 579, 576 (9th Cir. 1984).

The Fourth Circuit found that 28 inert grenades that did not contain powder were not destructive devices.  *United States v. Blackburn*, 940 F.2d 107, 109 (4th Cir. 1991).  The government argued that the defendant also possessed two other active grenades, which did contain powder and that the powder could be redistributed.  In applying a preponderance standard, the court found that the government had not made the requisite showing that there was sufficient powder to arm the remaining 28 grenades.  *Id.*  Separately, the court found that the 28 grenades were not destructive devices because "a defendant must possess *every* essential part necessary to construct a destructive device." *Id.* (emphasis in original).[2]

Similarly, here, the government relies upon pure speculation in asking the Court to conclude that a closed small bottle of vodka with a hand sanitizer soaked rag wrapped around the neck but not inserted was somehow capable of causing an explosion. The government has provided no evidence of what type of hand sanitizer was used, or the explosive abilities of vodka or hand sanitizer.  Counsel has reviewed countless cases about Molotov cocktails and all utilized gasoline or another clear incendiary liquid, none utilized alcohol.

Even if Ms. English did intend to create some form of Molotov cocktail, the items possessed by Ms. English were not objectively destructive devices.  "Congress made no mention of devices made criminal because of the intent of the possessor or

---

[2] The arguments about what constitutes a destructive device are largely based on those made by the defense in *US v. Hinton*, 23-mj-03 (MAU).

transferee." *United States v. Posnjak*, 457 F.2d 1110, 1117 (2d. Cir 1972).  Other cases have rejected the government's classification as destructive devices involving materials far more dangerous than a bottle of vodka.  Even dynamite has been found not to be a destructive device because it fell outside of the statutory definition since there was potential commercial use.  *United States v. Curtis*, 520 F.2d 1300 (1st Cir. 1975); *Posnjak¸*457 F.2d at 1117; *United States v. Schofer*, 310 F.Supp. 1292 (E.D.N.Y. 1970).  Vodka clearly has a potential commercial use.  Other courts have found that dynamite could be classified as a destructive device only where there is clear evidence of intent.  *Burchfield v. United State¸*544 F.2d 922, 976 (7th Cir. 1976); *Langel v. United States*, 451 F.2d 957 (8th Cir. 1971) (dynamite was part of a destructive device when it was clear that the intent was to use the device as a bomb); *United States v. Oba*, 448 F.2d 892 (9th Cir. 1971) (same); *United States v. Morningstar*, 456 F.2d 278 (4th Cir. 1972) (same).

In this case, there is no evidence that the bottles of vodka were used as a destructive device and detention is not permitted.

**II.    The government has not demonstrated, by clear and convincing evidence, that there are no conditions or combination of conditions that can reasonably assure the Court of the safety of the community.**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any

other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

The government bears the burden of demonstrating, by clear and convincing evidence, that preventative detention is necessary to ensure the safety of the community. No rebuttable presumption exists in this case so the burden of production and proof rests with the government. The government must ultimately prove that detention is necessary by the weighty "clear and convincing evidence" standard. Because it cannot prove that Ms. English is dangerous, with any combination of conditions, she should be released.

Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has set forth clear and convincing evidence that Ms. English be detained. They are: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the person charged; and 4) the nature and seriousness of the danger posed by the person to any person in the community if she is released. 18

U.S.C. § 3142(g).  Weighing all of these factors, this Court should release Ms. English.

### 1.  Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense charged weigh in favor of release.  Ms. English is accused of possessing a destructive device.

The government argues that Ms. English possessed the bottles of vodka and knife with the intent to use them to injure others, specifically Scott Bessent. However, Ms. English's actions demonstrate she had no intent to injure but rather that she drove from her home in Massachusetts to the U.S. Capitol building as a cry for help.  She was not aggressive when she approached the Capitol Police Officers. She never brandished any of the items as weapons and assisted police to retrieve the items on her person immediately. In fact, according to Body Worn Camera ("BWC"), officers stated, "that is not really a Molotov cocktail," when retrieving these items from her person.  She never attempted to use any of the items in a violent manner.  Instead, she walked calmly up to a Capitol Police Officer and turned herself in. She also stated to officers upon her arrest that, "I do not want to hurt anyone, which is why I turned myself in."  The government references other statements made by Ms. English in interviews or at the scene, but those statements are in stark contrast to her actual actions, which were in no way violent or dangerous.

Ms. English did not injure or even attempt to injure anyone or any property. She did not hurt anyone. She turned herself in and immediately complied with the police's orders.

### 2. The Weight of the Evidence

The weight of the evidence in this case favors release. For the reasons set forth above, even if all of the facts alleged by the government are true, Ms. English did not use or possess a destructive device.

### 3. History and Characteristics of the Defendant

Ms. English is a lifelong resident of Massachusetts. She graduated from high school and completed three years of college studying biology. Ms. English is a transgender woman, who has faced ridicule, discrimination, abuse, and scorn from family and friends because of her identity. Her parents essentially disowned her, indicating Ms. English could only live with them if she terminated her transition. Ms. English also suffered the tragic loss of her fiancé to suicide on November 5, 2025. Since President Trump's inauguration, Ms. English has been faced with a country and society who does not believe she should be recognized for who she is. She is forced to fear for her safety and ability to continue living as she is.

Ms. English is not a violent person. She has never been in trouble before and has no criminal history. Given that Ms. English has no record whatsoever, the nature and circumstances of this offense do not support a finding of future dangerousness, by clear and convincing evidence. *See Munchel v. United States¸* 991 F.3d 1273, 1283 (D.C. Cir 2021). ("Therefore, to order a defendant

preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community."). In short, the government, on this record cannot identify an articulable threat that, by clear and convincing evidence, requires detention. Conditions, for example, a stay away order from the District, can be fashioned to address any the threat or concerns that the Court may have.

### 4. The Nature and Seriousness of the Danger to Any Person in the Community

Ms. English is not a danger to anyone in the community. While the allegations demonstrate someone who has used poor judgment in effectuating a protest, there is no indication that she poses a danger. Ms. English took no action to use the items she possessed and instead immediately presented herself to an officer.

Importantly, Chief Judge Boasberg has found that the government had not carried its significant burden for preventative detention in a case alleging much more serious conduct. In a case alleging arson using a Molotov cocktail, the defendant was released because his record contained mostly misdemeanor convictions. *United States v. Ashton Nesmith*, No. 20-cr-156. In that case, the defendant lit a Molotov cocktail and threw it at an occupied, unmarked police car. The cocktail bounced off the car and resulted in a small fire on the ground. Chief Judge Boasberg reversed the Magistrate Court's decision to detain the defendant, finding that he could not conclude that there were no conditions that could reasonably assure the safety of the community. As discussed above, another Magistrate Judge in this Court also recently released an individual who lit the top

of a vehicle on fire. *See United States v. Hinton*, No. 25-cr-26 (APM). Lastly, in a case very similar to this one, where an individual attempted to walk into the U.S. Capitol Visitor Center with a torch, a flare gun loaded with a single cartridge, and two bottles filled with gasoline, the government did not even seek detention. *See United States v. Olson*, No. 24-cr-550 (ABJ).

In addition, there have been individuals charged and convicted from the events on January 6, 2021, who assaulted police officers or who possessed dangerous weapons who were released on their own recognizance and permitted to reside in their homes all over the country. *See US v. Michael Foy*, 21-cr-108 (TSC) (used a hockey stick to assault police and released pre-trial); *US v. Daniel Gray*, 21-cr-495 (ABJ) (assault case where defendant was permitted to live in residence in Florida despite allegations of assault on police officers inside the Capitol building); *US v. Jason Farris*, 23-cr-068 (ABJ) (January 6 assault case where defendant was released pending trial and permitted to reside in home in Texas).

The government cannot prove Ms. English to be dangerous, especially by clear and convincing evidence, with the conditions available to the Court.[3]

### III.   There are Statistics Showing that it is Extremely Rare for Defendants on Bond to Flee or Recidivate

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and doesn't reoffend. In fact, in 2019, 99% of released federal defendants

---

[3] Undersigned counsel is still working on providing the Court with a concrete release plan should the Court require one.

nationwide appeared for court as required and 98% did not commit new crimes on bond.[4]  Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[5]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[6]  The below chart reflects this data:

---

[4] Ex. 1, AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*,
No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at
https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[5] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* Ex. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* Ex. 2.

[6] *See* Exs. 1 and 2.

11



Despite the statistically low risk of recidivism that defendants like Ms. English pose, the government recommends detention in 71% of cases.[7]

Ms. English must be released because the government has not presented evidence that shows that she would be among the approximately 2% of defendants who commit another crime while on pretrial release.[8]

### Conclusion

For these reasons, Ms. English respectfully opposes the government's Motion for Pretrial Detention and requests her immediate release.

Respectfully Submitted,

A. J. KRAMER

---

[7] *See* Ex. 3, AO Table H-3 (September 30, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2021.pdf.

[8] This analysis is based on the one done in *U.S. v. Antonio Williams*, 22-cr-332 (RC), ECF No. 11.

Federal Public Defender for the
District of Columbia

*/s/ Maria Jacob*
Maria Jacob
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington D.C. 20004
202 208-7500